# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> NYGUL ANDERSON and ALBERT § <br> GONZALEZ, § <br> § <br> Defendants. § | Criminal Action No. 4:17-cr-00261-O |

## MEMORANDUM OPINION AND ORDER

The Court conducted a bench trial on this matter on February 27, 2018. Min. Entry, ECF No. 81. Accordingly, the Court sets out its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). The following findings and conclusions are based upon the pleadings, testimony, evidence, and exhibits admitted at trial. The Court has reviewed the record in its entirety and observed the witnesses presented at trial to assess their credibility and weigh their testimony. The Court provides a clear understanding of the basis of its decision in accordance with the level of detail required in this Circuit. *See Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998).

## I.    INDICTMENT

A grand jury charged Defendants Nygul Anderson ("Anderson") and Albert Gonzalez ("Gonzalez") (collectively "Defendants") with conspiring to possess extortion proceeds in violation of 18 U.S.C. § 371 and 18 U.S.C. § 880 (count one), conspiring to use an interstate facility to commit a Travel Act violation in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1952(a)(3) (count two), and attempted money laundering in violation of 18 U.S.C. § 1956(a)(3) (count three).

1

*See* Supers. Indict., ECF No. 41. Following the presentation of the evidence, the Court finds and concludes as follows:

## II.  FINDINGS OF FACT

The basic facts of this case are not in dispute, although the inferences to be drawn from them are.[1] On September 22, 2017, brothers Jose Antonio Diaz ("Antonio") and Jose David Diaz ("David") were kidnapped in Rioverde, San Luis Potosi, Mexico. On the same day, Raymundo Diaz Martinez ("Raymundo"), who lived in the Fort Worth Division of the Northern District of Texas, received threatening calls from an unknown Mexican phone number. Eventually the caller (the "Kidnapper") told Raymundo that he kidnapped Antonio and David and threatened to kill the brothers if Raymundo did not pay him $300,000.00. The next day, the Kidnapper lowered the demand, first to $40,000.00, and then to $20,000.00. The Kidnapper directed Raymundo to drop off the $20,000.00 next to a dumpster at a 7-11 store in Fort Worth, Texas. After Raymundo did so, the Kidnapper gave the location of the brothers and relatives of Raymundo and the brothers rescued and returned them home.

A week later, the Kidnapper again contacted Raymundo and threatened to kidnap and kill Antonio and David if Raymundo did not pay him $100,000.00. The Kidnapper again lowered the demand to $20,000.00. The Kidnapper communicated that he worked with the Mexican police and

---

[1] At trial, the parties submitted an Agreed Stipulation of Evidence that described the kidnapping and first money pick-up. The Government read these facts into the record during trial. *See* Min. Entry ECF No. 81, Amend. Stipul. Evid., ECF No. 85. At trial, Defendants objected to the inclusion of the kidnapping and first money drop-off. But the facts of the previous kidnapping are included in this Order to make clear the events that led to the arrest of Defendants. Federal Rule of Evidence 404(b)(2) does not prohibit the admission of evidence when that evidence is a necessary preliminary to the crime charged. *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996). Intrinsic evidence completes the story of the crime by providing immediate context of events in place and time. *Id.* The initial kidnapping led to the FBI's involvement on the second ransom demand, which led to Defendants arrest, and is therefore intrinsic to the crimes charged. In any event, the Government stipulated it had no evidence that Defendants Anderson and Gonzalez were involved in or knew of the kidnapping or the first money pick-up; therefore, the Government is not offering it as impermissible character evidence against them. Amend. Stipul. Evid. 3, ECF No. 85.

the Jalisco Cartel. Raymundo believed the threats and this time contacted the FBI for assistance. Under the direction of the FBI, Raymundo communicated with the Kidnapper, finally agreeing to deliver the money at a designated location, which turned out to be a Home Depot in Fort Worth, Texas, on October 13, 2017.

On October 7, 2017, Pancho (true name unknown) contacted Fernando Cabrera ("Cabrera") and asked him to pick up money for him. Cabrera knew Pancho to be a drug dealer in Monterrey, Mexico, who was selling drugs into Texas. Cabrera enlisted Gonzales to travel with him to pick up the money. Because they did not have a car, they enlisted Jose Torres ("Torres"), who had access to a car, to drive them. Torres' mother refused to let him use the car so Torres recruited Anderson, who also had a car, to drive instead. They all traveled from the McAllen, Texas area, to Houston, Texas, and then, after a change in plans, to Fort Worth, Texas, all at the direction of Pancho.[2] Cabrera told the others they were going to collect approximately $20,000.00 in drug proceeds from a location in Northern Texas.[3] Cabrera communicated to Defendants that instead of returning the money to Pancho, he intended to take them on a shopping spree. Among other things, they planned to purchase a car and several hundred dollars-worth of clothing. While Cabrera told Torres, Anderson, and Gonzalez that he believed the money represented illegal drug money, the money was actually the result of a ransom demand and extortion of Raymundo. As directed, they all traveled to a Home Depot in Fort Worth, Texas, to collect the money. Once at Home Depot, Flores attempted to collect the money, but law enforcement officials arrested him and the other Defendants.

## III. CONCLUSIONS OF LAW

---

[2] The Court grants Defendants' objections to the hearsay and irrelevant material contained in the text messages and does not consider any hearsay and irrelevant statements in its analysis.
[3] Defendants dispute that Cabrera told them this. However, the Court finds Cabrera told them this was the purpose of the trip.

### A. Count One—Conspiracy to Possess Extortion Proceeds (18 U.S.C. § 371 and 18 U.S.C. § 880)

Count one charges Defendants with conspiracy to possess extortion proceeds under 18 U.S.C. § 371, the object of which is 18 U.S.C. § 880. Section 371 requires the Government to show: (1) that two or more persons conspired to commit any offense against the United States, and (2) that one or more of the conspirators did any overt act to affect the object of the conspiracy. 18 U.S.C. § 371. Section 880 requires the Government to show: (1) that the defendant received or possessed money that was obtained from the commission of extortion; and (2) that the defendant knew that the money had been unlawfully obtained. 18 U.S.C. § 880.

Before trial, Defendants objected that count one of the Government's superseding indictment failed to allege the necessary *mens rea* of conspiracy to possess extortion proceeds. Defs.' Mot. Dismiss Count 1 3–4, ECF No. 54. Defendants argued that the Government must show a specific *mens rea*, namely, that Defendants knew that the money had been unlawfully obtained through extortion. *Id.* The Government responded that the plain language of the statute only requires the Government to show a more general *mens rea*, namely, that the Defendants knew that the money had been unlawfully obtained through any form of illegal activity. Pl.'s Resp. 1, ECF No. 59. The Court reserved ruling on this issue until after trial. Defendants renewed this objection after the Government rested its case.

This issue is a matter of statutory construction. The Court must determine what *mens rea* Congress included in the statute. The general rule is that a guilty mind is "a necessary element in the indictment and proof of every crime." *Elonis v. United States*, 135 S. Ct. 2001, 2003 (2015) (quoting *United States v. Balint*, 258 U.S. 250, 251 (1922)). When a statute is clear in describing the requisite *mens rea*, "clear text prevails over facts appropriate for resolving ambiguity." SCALIA & GARNER, READING LAW, "*Mens Rea* Canon," 310 (2012). This criminal statute provides:

> A person who receives, possesses, conceals, or disposes of any money or other property which was obtained from the commission of any offense under this chapter [the *actus reus*] that is punishable by imprisonment for more than 1 year, *knowing the same to have been unlawfully obtained* [the *mens rea*], shall be imprisoned not more than 3 years, fined under this title, or both.

18 U.S.C. § 880 (emphasis added). A plain reading of the text shows that "obtained from the commission of any offense under this chapter [extortion]" modifies "money or other property"—whereas "unlawfully obtained" modifies "knowing." *Id.* Moreover, there is no indication in the text that the words "commission of any offense under this chapter [extortion]" define the words "unlawfully obtained"—"unlawfully obtained" stands alone in a separate clause as a separate modifier. The text indicates, therefore, that "commission of [extortion]" and "unlawfully obtained" have independent meanings. "[C]ommission of [extortion]" means the specific act of extortion. "Unlawfully obtained" means obtained in violation of the law generally. PHILIP GROVER, ET AL., EDS., WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 2502 (1986) (defining unlawful as "not lawful: contrary to or prohibited by law . . . ").

In their motion to dismiss before trial and renewed at trial, Defendants argue that the title of the statute, "Possession of Extortion Proceeds," implies that the *mens rea* is more specific, requiring the Government to prove that Defendants knew that the property was received, possessed, concealed, or disposed by extortion. Mot. Dismiss Count 1, 2 ECF No. 54. But titles and headings should be used to interpret a statute only when there is ambiguity in the text. *See* SCALIA & GARNER, READING LAW, "Title-and-Headings Canon," 221 (2012). "Unlawfully" is not an ambiguous term; it means in a manner violating the law—any law. PHILIP GROVER, ET AL., EDS., WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 2502 (1986). Accordingly, 18 U.S.C. § 880 requires the Government to prove a specific *actus reus*—receiving, possessing, concealing, or

5

disposing money or property obtained by *extortion*—but a general *mens rea*—knowledge of *any illegal activity*. *See id.*

"[A]n indictment is sufficient if it contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend." *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quotation marks omitted). The Government charged Defendants with conspiring to violate 18 U.S.C. § 880 because "Anderson and Gonzalez knew that the money they were collecting was illicit." *See* Supers. Indict., 3 ECF No. 41. The statute has two elements: (1) "a person . . . receives, possesses, conceals, or disposes of any money or other property which was obtained from the commission of any offense under this chapter" (i.e., extortion); and (2) "knowing the same [the money or property] to have been unlawfully obtained" (i.e., obtained through any violation of the law). 18 U.S.C. § 880. Consistent with the statutory elements, count one of the superseding indictment charges *inter alia* that Defendants conspired to violate § 880 because "Anderson and Gonzalez knew that the money they were collecting was illicit"—that is, was unlawfully obtained. Supers. Indict. ¶ 5, ECF No. 41. The superseding indictment therefore "contains the [*mens rea*] element[ ] of the offense charged and fairly informs the defendant of the charge against which he must defend." *Cf. Lawrence*, 727 F.3d at 397.

The facts show that both Defendants believed the money they were sent to retrieve was illegal drug money. The Government has therefore shown through pleadings and trial testimony that Defendants participated in a conspiracy to receive, possess, conceal, or dispose of money that was illegally obtained. Further, Defendants do not dispute that the money was proceeds of the extortion scheme. The Government has met its burden of pleading and proving the elements of count one.

### B. Count Two—Conspiracy to Use an Interstate Facility to Commit a Travel Act Violation (18 U.S.C. § 371; 18 U.S.C. § 1952(a)(3))

To establish a conspiracy to commit a Travel Act violation under 18 U.S.C. § 371, the object of which is §1952(a)(3), the Government must prove: (1) that two or more persons must make an agreement to commit the crime of using interstate facilities to commit a Travel Act violation; (2) that the defendant knew the unlawful purpose of the agreement and joined with the intent to further the unlawful purpose; and (3) that one member of the conspiracy committed at least one overt act in furtherance of the conspiracy. 18 U.S.C. § 371. A violation of 18 U.S.C. § 1952(a)(3) requires that the defendant used a facility of interstate commerce with the specific intent to promote, manage, establish, or carry on unlawful activity. The Government must also prove the defendant knowingly and willfully promoted, managed, established, and carried on such unlawful activity. 18 U.S.C. § 1952(a)(3). Section 1952(b) defines "unlawful activity" as meaning, *inter alia*, "any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances . . . ." *Id.*

Defendants moved for judgment after the Government rested its case arguing that a single instance of unlawful activity, which was all that Defendants engaged in, does not qualify as an ongoing business enterprise under the statute. To that end, they cite to *United States v. Roberson*, which states that a single act does not constitute a business enterprise under the statute. 6 F.3d 1088, 1094 (5th Cir. 1993). The Government responded that there was an ongoing business enterprise under 18 U.S.C. § 1952(a)(3) and that the Defendants participated in that enterprise. The text of the statute does not require defendants under the statute to create a new business enterprise. *United States v. Carrion*, 809 F.2d 1120, 1127 (5th Cir. 1987).

First, an interstate telephone call or use qualifies as a Travel Act violation. *See, e.g.*, *United States v. Garrett*, 716 F.3d 257, 265 (5th Cir. 1983). Moreover, a cell phone qualifies as an "interstate facility" under the Travel Act. *See United States v. Grace*, 568 Fed. App'x 344, 351

7

(5th Cir. 2014). And the parties stipulated at trial that "a cell phone is a facility in interstate commerce." Amen. Stipul. Evid. 3, ECF No. 85. Here it is undisputed that Cabrera, a co-conspirator, made at least one interstate telephone call using a cell phone to carry out the planned conspiracy during the events in question. Indeed, he used his cell phone repeatedly from the time he left McAllen until his arrest in Fort Worth. Accordingly, the only question left is whether Defendants were involved in an ongoing business enterprise.

Defendants objected at trial that a single instance of unlawful activity is insufficient to prove they conspired under 18 U.S.C. § 371 to commit a § 1952(a)(3) violation because they were not engaged in an ongoing business enterprise. They do not contest that there was a conspiracy to obtain the money, but instead Defendants say this cannot satisfy the Government's burden to show an "ongoing business enterprise" conspiracy as charged in the indictment.

The Fifth Circuit does not require the government to prove that "the defendant personally engaged in a continuous course of conduct" to satisfy the Travel Act. *Carrion*, 809 F.2d at 1127. Instead, the government must prove the existence of (1) an existing continuous business enterprise and (2) that the defendant participated in that enterprise. *Ruiz*, 987 F.2d at 251. Even a single act of participation suffices under § 1952. *Id.*

The facts at trial show that Pancho was engaged in an ongoing drug enterprise, which is a continuous business enterprise. 18 U.S.C. § 1952(b) (defining "unlawful activity" to include "any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances . . . ."). At trial, Cabrera testified that Pancho was a drug dealer, and while he had yet to smuggle drugs for Pancho, the opportunity had been discussed and Cabrera was waiting for the right chance.[4] Defendants also believed themselves to be participating in the

---

[4] Q: What kind of drugs did he want you to sell for him? A: Cocaine and marijuana. Q: And did you

ongoing narcotics or controlled substances enterprise, by retrieving the proceeds. These facts show that there was an ongoing business enterprise operated by Pancho, which Cabrera joined, and that Defendants agreed to participate in. This satisfies the necessary elements of both § 371 and § 1952(a)(3). *Cf. Ruiz*, 987 F.2d at 251.

### C. Count Three—Attempted Money Laundering (18 U.S.C. § 1956(a)(3))

Finally, Defendants contend the Government did not properly charge them under count three and the evidence is insufficient to convict them on this count. The grand jury charged the Defendants with violating 18 U.S.C. § 1956(a)(3)—attempted money laundering. The statute requires the Government to prove that: (1) a defendant knowingly attempted to conduct a financial transaction; (2) the attempted transaction involved property represented to be proceeds of a specific unlawful activity (here extortion); and (3) the defendant intended to promote the carrying on of a specified unlawful activity *or* the defendant intended "to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of a specific unlawful activity" (here, drug trafficking). 18 U.S.C. § 1956(a)(3) (emphasis added).

Defendants first objected to this count as duplicitous. Defendants argued that, by including § 1956(a)(3)(A)–(B) in the same count in the indictment, the Government impermissibly intertwined two counts into one. Defs.' Mot. Dismiss Count Three 4, ECF No. 53. Second, Defendants objected that the Government failed to carry its burden under the statute because it charged Defendants with attempting to launder extortion proceeds and Defendants believed that the money constituted proceeds of drug trafficking.

---

ultimately sell drugs for him? A: No, sir. Q: Why not? A: Because I was trying to get – he never – it never happened. Q: Is it because you didn't want to do it or because you thought it was wrong or is it because it just never came together? A: It just never came together. Q: So you would have done it if the opportunity had arose? A: Yes, sir. Min. Entry, ECF No. 81 (Cabrera's trial testimony).

The Government responded that it properly charged both § 1956(a)(3)(A)–(B) as it includes two alternative mental states rather than two distinct and separate offenses. Additionally, the Government argued that the statute only requires the Government to prove that Defendants intended to launder money that was from the proceeds of any specified unlawful activity under § 1956(c)(7). In other words, the Government argued that the specific unlawful activity that Defendants' believed to have occurred can be different from the actual specific unlawful activity that was represented to have occurred.

The Court must address three questions. First, is the count duplicitous? Second, does the statute require the specific unlawful conduct to be the same in both elements? Third, did the Government carry its burden of showing that Defendants intended to promote a specific unlawful activity or to conceal or disguise property believed to be the proceeds of a specific unlawful activity?

Defendants argue that by pleading § 1956(a)(3)(A)–(B) in count three, the Government has impermissibly alleged two crimes within one count. The Eleventh Circuit has addressed this issue and held that § 1956(a)(3) includes three separate mental states for a single offense of money laundering, all subject to one punishment. *United States v. Florez*, 516 Fed. Appx. 777, 784 (11th Cir. 2013). The *Florez* court also found that it is permissible to charge the defendant with any or all three forms of intent "in the conjunctive in the indictment." *Id.*

While the Fifth Circuit has not addressed this issue, as a matter of textual interpretation, the Court agrees with the Eleventh Circuit's interpretation. Section 1956(a)(3) is considered to be the "sting" operation of the statute, requiring the property merely be represented to be illegal proceeds. *See United States v. Castaneda-Cantu*, 20 F.3d 1325, 1332 (5th Cir. 1994); *United States v. Arditti*, 955 F.2d 331, 339 (5th Cir. 1992) (describing the actions of law enforcement officials

who used legally obtained property represented to be proceeds of illegal activities in order to convict defendants under this statute). It reads as follows:

> (3) Whoever, with the intent—
>
>> (A) to promote the carrying on of specified unlawful activity;
>> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
>> (C) to avoid a transaction reporting requirement under State or Federal law,
>
> conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

The text contains one punishment—connecting "whoever, with the intent . . .," then listing three purposes or *mens rea* for the statute, to the *actus reus* of "conducts or attempts to conduct . . . ." *See also* SCALIA & GARNER, READING LAW, 156–57 (2012) (describing the Scope-of-Subparts Canon as "material within an indented subpart relates only to that subpart; material contained in unindented text relates to all the following or preceding indented subparts."). In this way the statute provides three intentions—"to promote," "to conceal," or "to avoid"—while all leading to one action and one punishment under the plain text. *Florez*, 516 Fed. App'x at 784.

Next, there is no requirement that Defendants understand that the funds to be laundered were proceeds of the same specified unlawful activity. "It is enough that the government prove that an enforcement officer or other authorized person made the defendant aware of circumstances from which a reasonable person would infer that the property was drug proceeds." *United States v. Kaufmann*, 985 F.2d 884, 893 (7th Cir.), *cert. denied*, 508 U.S. 913 (1993); *see Castaneda-*

*Cantu*, 20 F.3d at 1331. The Fifth Circuit model jury instructions provide that it is not necessary for the charged specified unlawful activity in the second element to be the same as the charged specified activity in the third element, at least in a case applying § 1956(a)(3)(A). Pat. Jury Instruct. (Criminal) 377 (5th Cir. 2015); *see Castaneda-Cantu*, 20 F.3d at 1331.

The statute uses the phrase "specified unlawful activity" twice. First, it requires proof that the money was represented to be obtained through "specific unlawful activity," and second, it requires proof that Defendants knew it was obtained through "specific unlawful activity." 18 U.S.C. § 1956(a)(3). "Specified unlawful activity" refers to any of the activities as defined in § 1956(c)(7), which would include proceeds of extortion, or proceeds of drug sales. 18 U.S.C. § 1956(c)(7) (defining "specified unlawful activity"). By its plain language, the statute does not require that the specified unlawful activity forming the *actus reus* be the same as the specified unlawful activity of the *mens rea*. There is no indication that "specific unlawful activity" needs to be the same within the statute as long as the activity in the charging instrument is contained in the defining clause of the statute.

Finally, as to the first *mens rea*, § 1956(a)(3)(A) requires the Government show that the Defendants intended to "promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(3)(A). But at trial, the evidence and testimony did not show that the Defendants intended to promote the carrying on of either extortion or a drug crime. Instead, the Government's evidence showed that Defendants intended to take the money and go on a shopping spree. This does not show an intent to promote the carrying on of a specified unlawful activity under § 1956(c)(7). There was no evidence of an attempt to take the money to Pancho or any evidence offered that the money or items purchased were going to be used to conduct further drug crimes. Accordingly, the Government did not meet its burden to prove a violation of 18 U.S.C. § 1956(a)(3)(A)(i).

However, § 1956(a)(3)(B) requires the Government to show that the Defendants intended to "conceal or disguise the nature . . . ownership, or control of property believed to be the proceeds of specified unlawful activity." Here, the Government showed Defendants intended to use the proceeds to buy a car, to buy clothing, and to go on a shopping spree. Defendants argue that the Government must demonstrate Defendants intended to conceal the proceeds through a financial transaction. *Regalado Cuellar v. United States*, 553 U.S. 550, 553 (2008). Merely hiding the money does not suffice. *Id.* There must be some attempt to conceal the fraudulent nature of the money or property in order to satisfy the necessary elements. A purchase of a car is a financial transaction within the meaning of the statutory prohibition against money laundering. *Kaufmann*, 985 F.2d at 893. The Government presented evidence and witness testimony to show that Cabrera and Defendants intended to complete a financial transaction with the extortion proceeds by shopping for clothing, a car, and other purchases.

The Government has therefore carried its burden of showing: (1) that the Defendants knowingly attempted to conduct a financial transaction—the buying of a car and clothing; (2) that the attempted financial transaction involved property represented to be the proceeds of a specified unlawful activity—here extortion; and (3) that the Defendants intended to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity—here drug trafficking.

## IV. CONCLUSION

Based on the foregoing, Defendants are **GUILTY** on all three counts of the superseding indictment.

**SO ORDERED** this **12th day** of **March, 2018.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

13